**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEAN A. MONCO, an individual, JOHN S., MORTIMER, an individual, and WOOD, PHILLIPS, KATZ, CLARK & MORTIMER, AN Illinois professional partnership,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **No. 17 C 6882** |
| v. | ) ) | **Judge Thomas M. Durkin** |
| **ZOLTEK CORPORATION, a Missouri corporation, ZSOLT RUMY, an individual, and TORAY INDUSTRIES, INC., a Japanese corporation,** | ) ) ) ) ) ) | **Magistrate Judge Jeffrey Cole** |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**A.**

The parties' current discovery dispute[1] began with a motion to compel that the plaintiffs filed on April 4, 2018. On April 10th, I ordered the defendants to produce (1) all agreements between the Zoltek Corporation, Toray Industries and/or Mr. Rumy, the founder of Zoltek Corporation, about the underlying case (including any agreement concerning the allocation of proceeds of settlement, and (2) all communications between Mr. Rumy and Toray Industries concerning the underlying case (including any communications relating to plaintiffs). The defendants were given a month in which to comply. They objected to the Order, but Judge Durkin denied those objections. [Dkt. # 110].

---

[1] This ruling pertains only to those documents discussed and sought in plaintiffs' motion to compel, the email chain and the draft agreement. [Dkt. #120]. Midway through briefing on those documents plaintiffs raised the issue of additional documents they wish to obtain from Zoltek Corporation. Those will have to be the subject of a proper motion to compel, filed only after the parties *strictly* comply with Local Rule 37.2 and meet and confer in good faith regarding the additional documents. Emails and messages do not count under the Rule.

Taking every minute of the 30 days the Order gave them, defendants made their production on May 10th. One of the documents produced was an email chain between Mr. Rumy and Zoltek Corporation and a representative of Toray Industries. The email referenced the draft of an agreement that Mr. Rumy sent Toray Industries, and explained that Toray Industries indicated it would be going over the draft with its counsel and Zoltek Corporation management.

Two weeks after production, Zoltek Corporation filed a motion asking that the court enter the parties' agreed Protective Order. [Dkt. #113]. The Order was entered on May 15th. [Dkt. #115]. One of its provisions stated that "[i]nadvertent disclosures of material protected by the attorney-client privilege or the work product doctrine shall be handled in accordance with Federal Rule of Evidence 502." [Dkt. #115, ¶ 6].[2] On May 16th, plaintiffs asked Zoltek Corporation to produce the Agreement mentioned in the email chain. Hearing nothing for almost a week, plaintiffs' counsel called defendants' counsel again. Plaintiffs' counsel does not relate how that conversation went [Dkt. #120, at 2], but he had to send an email request for the draft agreement on May 21st. Zoltek Corporation's counsel promised she would get back to plaintiffs' counsel about the matter the afternoon of May 22nd. By email that evening, for the first time in this entire exchange, Zoltek

---

[2] The Rule provides that disclosure "does not operate as a waiver in a federal or state proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed.R.Civ.P. 26(b)(5)(B) states that:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Corporations's counsel claimed that the email chain was privileged and had been inadvertently produced, demanded its destruction, and promised to provide a Privilege Log regarding the draft agreement. Zoltek Corporation's counsel referenced paragraph 6 of the parties' Protective Order, Fed.R.Civ.P. 26(b)(5)(B), and Fed.R.Evid. 502. [Dkt. # 120-3]. For the following reasons, the Motion of Zoltek Corporation is denied, and it is ordered that Zoltek Corporation produce the withheld draft agreement immediately.

**B.**

When defendant, Zoltek Corporation, made its court-ordered production on May 10th, it withheld the draft agreement between defendant, Zsolt Rumy, and defendants, Toray Industries and Zoltek Corporation. The draft clearly fell into the categories referenced in the Order of April 10th. Zoltek Corporation provided no Privilege Log describing the nature of each document being withheld, even though a Privilege Log describing the nature of each withheld document must be provided in a timely manner. *Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006). Indeed, Zoltek Corporation made no claim of privilege, whether supported or unsupported, and gave no indication that it was withholding, for any reason, any documents in the categories it had been ordered to produce. That much is clear from Zoltek Corporation's "Opening Brief on Privilege of Questioned Document" and the Declaration of counsel, which contain no mention of any privilege log or timely claim of privilege for the withheld document. [Dkt. ##138, at 3-4; 138-3]. Thus, Zoltek Corporation violated Federal Rule of Civil Procedure 26(b)(5)(A):

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

3

Zoltek Corporation failed to do both (i) and (ii).

It bears repeating that compliance with Rule 26(b)(5)(A) is not optional. *Motorola Sols., Inc. v. Hytera Commc'ns Corp*, No. 17 C 1973, 2018 WL 1281393, at *2 (N.D. Ill. Jan. 10, 2018). So, the real issue here isn't inadvertent disclosure of the email chain; it's waiver of the privilege as to the draft agreement itself. *See, e.g. Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005)("'To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.'" (quoting Rule 26(b)(5) Advisory Committee's note (1993 Amendments)).

To be sure, the waiver doctrine is not applied mechanistically. *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889 (N.D. Ill. 2018); *Motorola Sols., Inc. v. Hytera Commc'ns Corp*, No. 17 C 1973, 2018 WL 1281393, at *2 (N.D. Ill. Jan. 10, 2018); *Muro v. Target Corp.*, 250 F.R.D. 350, 365 (N.D. Ill. 2007). But what Zoltek Corporation has done here goes beyond the failure to file an adequate privilege log – or any log at all – or make an adequately supported claim. Here, the failure was to make any claim at all, and the document was therefore, it must be said, withheld surreptitiously. Defendant had multiple opportunities to indicate, even by an unadorned claim, that it was withholding this document from discovery based on privilege or work product. It did nothing. The defendants' silence is telling. *See generally* the discussion in *R-Boc v. Minemyer*, 233 F.Supp.2d 647, 684 (N.D.Ill. 2017), *aff'd*.,728 Fed.Appx. 821 (Fed.Cir. 2018).

The document was only discovered because Zoltek Corporation produced – "inadvertently," it claims – an email chain referring to the document. In such an instance, a court should have no qualms about finding the party engaging in such a tactic has waived its privilege as to that document.

4

*Compare The Manitowoc Co., Inc. v. Kachmer*, No. 14-CV-9271, 2016 WL 2644857, at *4 n.5 (N.D. Ill. May 10, 2016)(waiver found where party failed to list documents it did not produce in privilege log as this went "beyond a good faith oversight") *with Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, No. 07 C 1707, 2011 WL 13262362, at *4 (N.D. Ill. Jan. 10, 2011)("Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver.").

As for the email chain that referenced the draft agreement, there is no doubt that it was produced unwittingly – but not in the sense that Rule 502 uses the term, "inadvertently." After all, it was the document that revealed Zoltek Corporation's studied attempt to withhold documents it had been ordered to produce on April 10th, and to withhold them without a claim of privilege or privilege log. Thus, its production from Plaintiffs' perspective was definitely a blunder; but it was not an "inadvertent disclosure," as the cases define the term.

The email, dated June 7, 2016, is between two non-attorneys, Mr. Zsolt Rumy and Mr. Aihara of defendant, Toray Industries. Mr. Rumy had sold Zoltek Corporation to Toray Industries in 2014. He then is said to have been a consultant and then "transition[ed] away from involvement with Zoltek Corporation." [Dkt. #139-2, ¶¶ 4, 6]. It's all very vague – vagaries are a feature of Zoltek Corporation's submissions, likely with good reason – and Zoltek Corporation provides no timeline. But, in the email chain, Mr. Rumy Mr. Rumy and Mr. Aihara are clearly negotiating the terms of an agreement, with Mr. Rumy having sent a draft – the document already discussed – and Mr. Aihara sending back his thoughts and questions. Mr. Rumy tells us, in a declaration attached to Zoltek Corporation's opening brief, that the document evinces a deal whereby Toray Industries would assign a patent that was the centerpiece in a 20-year litigation odyssey back to Mr. Rumy.

5

[Dkt. #139-1, ¶ 9]. Mr. Rumy would then take over the litigation, which Toray Industries had become disinterested in pursuing. [Dkt. #139-1, ¶8]. Two months later, Mr. Rumy and Toray say they executed what they tendentiously term a "common interest agreement." [Dkt. #139-1, ¶ 10; #139-2, ¶ 6]. But, titles are not determinative; substance is. *Health Care Industry Liability Insurance Program v. Momence Meadows Nursing Center, Inc.*, 566 F.3d 689 (7th Cir. 2009); *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008); *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, No. 2017 WL 4682734, at *1 (N.D. Ill. 2017). What Mr. Rumy calls the draft patent transfer agreement [Dkt. # 139-1, ¶¶ 11, 15], Zoltek Corporation has chosen not to make a part of the record, so there is no way to tell if it even covers the deal discussed in the email at issue; it might exclude it or, as it was allegedly executed two months after the email chain at issue, might not even be applicable. Cf., *Dong Seok Yi v. United States*, 2015 WL 2127540, at *10 (N.D. Ga. 2015)("Movant's current claim of innocence is not supported by any evidence other than his current assertion."); *Ner Tamid Congregation of N. Town v. Krivoruchko*, No. 08 C 1261, 2009 WL 10696539, at *2 (N.D. Ill. 2009)(claim of mistake was not supported by affidavit, and a lawyer's unsupported statements in briefs are not evidence).

So, manifestly, based on what little Zoltek Corporation, Mr. Rumy, and Toray choose to tell us, we have a contract negotiation for the sale of the patent rights back to Mr. Rumy from Toray Industries. Like most contract negotiations, the negotiation between Mr. Rumy and Toray Industries for the transfer of the patent is are not privileged. They are akin to a game of Texas Hold 'Em, insofar as there are flop, turn, and river cards – face up – and hole cards – face down. The face up cards here are the questions and comments from Toray Industries and the attach draft agreement from Mr. Rumy. Ordinarily, even if those items revealed legal advice, any privilege that might

6

attach to them would be waived as, obviously, they weren't kept confidential. The "common interest doctrine," which Zoltek Corporation insists is applicable here, is not.[3]

### D.

The "common interest" doctrine is not a separate privilege; rather, it derives from the attorney client privilege. It is "an exception to the rule that no privilege attaches to communications

---

[3] By the time Zoltek Corporation filed its reply brief, it seemingly came to the realization that its characterization of the document at issue as a "patent transfer agreement" or "draft patent transfer agreement" in its opening submissions [Dkt. #139-1, ¶¶ 9, 11, 15] was fatal to its common interest doctrine claim. And, so, Zoltek Corporation tells us *for the first time in its reply brief* that the document is not an asset transfer at all, because the patent had expired and had no other use than in the underlying patent litigation. It also bizarrely blames the plaintiffs for this mischaracterization even though it clearly referred to it as a patent transfer – an asset transfer – multiple times. Zoltek Corporation also claims, in its reply brief, that the document embodies "the terms [Zoltek Corporation and Mr Rumy] could move forward together in litigation . . . ." [Dkt. # 151, at 1]. But that's directly contradictory to the Zoltek Corporation's representations in its opening submissions that Mr. Rumy was transitioning away from Zoltek Corporation and Toray and would "pursue the Stealth litigation in [his] *individual* capacity." [Dkt. #139-1, ¶ 9 (emphasis supplied)].

The courts have characterized this tactic in a variety of ways – all negative. Blind-siding, gamesmanship, and sandbagging are the most commonly used epithets. Regardless of the name applied, the gambit has no place in the judicial system. *Cf., United States v. Portis*, 542 F.2d 414, 418 (7th Cir. 1976)(condemning "gamesmanship in getting the last word")*; Pike v. Caldera*, 188 F.R.D. 519, 537 (S.D. Ind. 1999). Loading-up in a reply brief effectively results in a one-sided presentation, which is hopelessly inconsistent with the very premise on which the adversary system is based. In addition to being unfair to one's opponent, the tactic of saving what is claimed to be significant for last adversely affects the accuracy of the judicial process, which depends on comprehensive presentations by both sides. *Cf., Adamson v. California*, 332 U.S. 46, 59 (1946) (Frankfurter, J., concurring).

Thus, litigants are chastised for raising new arguments or new evidence in reply briefs; a reply brief is for replying, not for raising a new ground. In that context the new matter is deemed waived. *Wilborn v. Ealey*, 881 F.3d 998, 1009 (7th Cir. 2018); *Illinois Commerce Comm'n v. Fed. Energy Regulatory Comm'n*, 721 F.3d 764, 776 (7th Cir. 2013); *United States v. Cozzi*, 613 F.3d 725, 730 (7th Cir. 2010); *United States v. Wescott,* 576 F.3d 347, 354 (7th Cir.2009). But what Zoltek Corporation has done here is worse. It has tried to change its story When a party cannot keep a story straight from one brief to the next, the court cannot help but look upon the party's position with a jaundiced eye. See *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 67678 (7th Cir.2003);*Dong Seok Yi v. United States*, 2015 WL 2127540, at *10 (N.D. Ga. 2015);*Perry v. Bath & Body Works, LLC*, 993 F. Supp. 2d 883, 907 (N.D. Ind. 2014);;*Dong Seok Yi v. United States*, 2015 WL 2127540, at *10 (N.D. Ga. 2015).

7

between a client and an attorney in the presence of a third person." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007).[4] The "common interest" doctrine allows communications that are already privileged to be shared between parties having a "common legal interest" without a resultant waiver. The doctrine "only will apply where the parties undertake a joint effort with respect to a common *legal* interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise." *BDO Seidman*, 492 F.3d at 815–16 (emphasis supplied). *See also* discussion in *Miller UK Ltd. v. Caterpillar, Inc*., 2014 WL 67340, 12 (N.D.Ill. 2014)*; LG Electronics USA v. Whirlpool Corp.*, 661 F.Supp. 2d 958, 960 (N.D.Ill. 2009)(St. Eve, J.).[5] Unless the party asserting the "common interest" establishes that the withheld documents were otherwise privileged, the "common interest" doctrine does not come into play. *See In re Pacific Pictures Corp.,* 679 F.3d 1121, 1128–1131 (9th Cir.2012); *Miller UK Ltd. v. Caterpillar, Inc*., 2014 WL 67340, 12 (N.D.Ill.2014); *Pampered Chef,* 737 F.Supp.2d at 968; *Dexia Credit Local v. Rogan,* 231 F.R.D. 268, 273–274 (N.D.Ill.2004); *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.,* 215 F.R.D. 466, 470 (S.D.N.Y.2003); *Metro Waste Water Reclamation District v. Cont'l Cas. Co.,* 142 F.R.D. 471, 478 (D.Colo.1992).

The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance

---

[4] In its reply brief, Zoltek Corporation seems to assert that Eighth Circuit law should apply to the question of whether the common interest doctrine applies and states that it discussed Eighth Circuit law in its opening brief at pages 4-6. [Dkt. # 151, at 7 & n. 2]. Most of the cases Zoltek Corporation relied upon, however, are either Seventh Circuit cases or cases from this district. [Dkt. #148, at 4-8]. But as discussed, *infra*, the cases Zoltek Corporation cites, whether from the Seventh Circuit, Eighth Circuit, or the Northern District of Illinois, do not support the common interest doctrine to the commercial transfer here.

[5] *In re Whirlpool Corp.*, 597 F.3d 858 (7th Cir. 2010), the Court of Appeals called Judge St. Eve's opinion "thoughtful." *Id*. at 860.

of law and administration of justice."*Jaffee v. Redmond*, 518 U.S. 1, 11 (1996). If an invocation of the privilege would adversely effect the interests of the administration of justice, it should not be accepted. *Swidler & Berlin v. United States*, 524 U.S. 399, 412 (1998). A privilege should operate only where "necessary to achieve its purpose," *Fisher v. United States,* 425 U.S. 391, 403 (1976), and to "serv[e] public ends." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). Because "the privilege is in derogation of the search for truth," any exceptions to the requirements of the attorney-client privilege "must be strictly confined." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). Since the common interest doctrine is not a separate privilege, these principles necessarily apply in cases like this and operate against Zoltek Corporation's claim.[6]

Here, there is plainly not the required shared legal interest in an ongoing enterprise. All we know from Zoltek Corporation is that one party – Toray Industries – is transferring a patent to another party– Mr. Rumy. Zoltek Corporation tells us that Toray Industries is transferring that patent because it doesn't want to be involved in the ongoing litigation anymore. As such, Toray Industries does not share the required common *legal* interest with Mr. Rumy; quite the contrary: Toray Industries is abandoning a legal interest and transferring it to Mr. Rumy. Mr. Rumy says that he then would pursue the litigation in his "*individual* capacity." [Dkt. #139-1, ¶ 9](Emphasis supplied). By definition, that's not a "joint venture," regardless of Zoltek Corporation's tendentious attempt to describe it as such. [Dkt. #139, at 6]. It is well to remember that "saying so doesn't make it so." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010).

---

[6] "Evidentiary privileges in litigation are not favored." *Herbert,* 441 U.S. at 175. "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed for they are in derogation of the search for the truth." *United States v. Nixon,* 418 U.S. 683, 710 (1974). *See also Pierce County, Wash. v. Guillen,* 537 U.S. 129, 144–145 (2003); *University of Pennsylvania v. EEOC,* 493 U.S. 182,189 (1990).

Evidence, not arguments or conclusions in briefs, are what count. *See, e.g., Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018); *Long v. Pfister*, 874 F.3d 544, 555 (7th Cir. 2017)."Abraham Lincoln once was asked how many legs a donkey has if you call its tail a leg. His answer was four: calling a tail a leg does not make it one..." *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011). Just so with the defense claim that the parties had a "common legal interest."

**E.**

Zoltek Corporation is unable to direct us to any case where simply being a party to a commercial transaction results in the parties sharing a "common legal interest" in an ongoing enterprise. The cases that Zoltek Corporation relies upon do nothing to support the applicability of the common interest doctrine in this case. Indeed, two of the cases reject the application of thedoctrine. *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922–23 (8th Cir. 1997) held that the doctrine did not apply to a conference among the Clinton White House and counsel and Hillary Clinton and counsel regarding the Whitewater investigation. The sale of a patent from one party to another certainly falls far short of that. *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 327–28 (N.D. Ill. 2008) found there was no common interest between a litigant and the litigants's creditor, even though the creditor would benefit from the litigant's victory in the lawsuit. Like the situation here, the shared interest in *Grochocinski* was a business one, not a "legal" one. 251 F.R.D. at 327 ("The only interest SC has in the litigation is that it hopes it wins so that it can get money, not because it has an actual legal interest in any of the claims.").

*Dexia Credit Local*, 231 F.R.D. at 294 found that the common interest doctrine applied because the parties demonstrated they had an "ongoing business enterprise" and were "'joined at the

10

hip' in connection with the management of [a] hospital." The situation between Toray Industries and Mr. Rumy is nothing like that. Toray Industries is selling the patent and exiting the litigation; Mr. Rumy is buying the patent rights and taking over the litigation, as he says, in his "individual capacity." Toray and Zoltek Corporation are out of the case, and Mr. Rumy is in. Thus, it is a contradiction in terms to say that this evidences a "common legal interest" as the cases use that term. The parties in *Matter of Quantum Chem./Lummus Crest*, No. 90 C 778, 1992 WL 71782, at *3 (N.D. Ill. Apr. 1, 1992), insured and insurer, had a clear, common, legal interest in preparing cases against those that might be liable for a fire that caused losses to the insurer. And finally, the witness who asserted the common interest doctrine in *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 965–66 (N.D. Ill. 2010) had, like the defendants in the case, left the plaintiff company and allegedly breached the non-solicitation and confidentiality clauses of her employment contract. She hadn't been sued – at that point – but her legal position lined up squarely with the defendants in the case.

In sum, Zoltek Corporation has not shown the that the common interest doctrine is applicable to the deal between Toray Industries and Mr. Rumy to transfer the patent back to Mr. Rumy. Accordingly, any attorney-client privilege that might have attached to the email and attachment is deemed waived. The question of work product protection, however, requires a different analysis.

**F.**

Codified at Rule 26(b)(3) of the Federal Rules of Civil Procedure, the work-product doctrine is designed to protect an attorney's thought processes and mental impressions against disclosure, and to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Or in Justice Jackson's inimitable phrasing: "Discovery was hardly intended to enable a learned profession to

perform its functions either without wits or on wits borrowed from the adversary." *Hickman*, 329 U.S. at 516 (concuring opinion). *See also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010).

In a contract negotiation, Toray Industries and Mr. Rumy are adversaries across the poker table, as it were. Again, the draft contract from Mr. Rumy and the suggestions for changes and questions from Toray Industries are the river cards in the game. Those cards weren't kept confidential; the parties chose to reveal information to one another at that point of the negotiation. But, unlike the situation involving attorney-client privilege, disclosure to a third party doesn't necessarily waive work product protection. The question is whether the disclosure is inconsistent with the foregoing dual purposes of the doctrine. *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1025 (7th Cir. 2012); *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 898 (N.D. Ill. 2018).

Here, the work product doctrine is inapplicable. While the patent transfer agreement was purportedly designed to transfer control of the lengthy case from Toray Industries to Mr. Rumy, that's not what "prepared in anticipation of litigation" means in the context of work product protection in this case. There is nothing in Zoltek Corporation's submissions that suggests that the draft agreement contract for the transfer of the patent and any suggested edits or questions about it in the email reveal any strategies for pursuing the patent litigation or this litigation. *Cf. Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 767–68 (7th Cir. 2006)("The work-product doctrine shields materials that are prepared in anticipation of litigation *from the opposing party*, on the theory that the opponent shouldn't be allowed to take a free ride on the other party's research, or get the

12

inside dope on that party's strategy, . . . .")(Emphasis supplied).[7]

All Zoltek Corporation, being deliberately vague, can say is that the draft agreement is "a document prepared concerning the [patent litigation] and the result of the legal advice [Mr. Rumy] had received from his counsel regarding the [patent litigation]." [Dkt. #139, at 7]. That document, the patent transfer agreement – again according to Zoltek Corporation – merely results in a change of the plaintiff in the patent litigation. Toray Industries would step away, and Mr. Rumy would take over in his "individual capacity." That is not a strategy in a sense all the cases use the term. Quite the contrary. It is merely a fact that is inevitably and intentionally revealed to all, including the adversary in that litigation. It is not a question of an adversary's performing his functions with wits borrowed from his opponent. Thus, Zoltek Corporation has fallen far short of establishing that the emails and draft patent transfer agreement sent between Mr. Rumy and Toray Industries were prepared in "anticipation of litigation" and protected by the work product doctrine.

### G.

The case is presently set for oral argument on Thursday, July 19, 2018. [Dkt. #124]. However, after reviewing the briefs it appears that oral argument will be unnecessary. Cases can be decided without oral argument where it would not significantly aid the court. The rule applies both in the Courts of Appeals, *Delgado v. Merit Syst. Protection Board*, 880 F.3d 913 (7th Cir. 2018); Fed.R.App.P. 34(a)(2)(C), and in the district courts.; Fed.R.Civ.P. 78(b); Civ. L.R. 7–1(b); *G & G*

---

[7] *See also Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 899 (N.D. Ill. 2018)("It is not enough that the materials were prepared by lawyers or represent legal thinking. Much corporate material prepared in law offices or reviewed by lawyers falls in that vast category. It is only work done in anticipation of or for trial that is protected. Even if prepared by lawyers and reflecting legal thinking, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by the doctrine and Fed.R.Civ.P. 26.").

*Closed Circuit Events, LLC v. Looney*, 2013 WL 1739576, at *1 (N.D.Cal. 2013). After reviewing the presentations in this case, [Dkt. ##120, 144, 148, 151], I have concluded that the due administration of justice will not be affected if oral argument is not held. Accordingly, the oral argument date of July 19, 2018 [Dkt. #124] is stricken, and the parties need not appear on that date.

## CONCLUSION

The "common interest" doctrine does not apply to the document or documents at issue here and presently being withheld by the defendants. They must be turned over no later than 7/19/18.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 7/16/18