UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEAN A. MONCO; JOHN S. MORTIMER; WOOD, PHILLIPS, KATZ, CLARK & MORTIMER, <br><br> Plaintiffs, <br><br> v. <br><br> ZOLTEK CORPORATION; ZSOLT RUMY; and TORAY INDUSTRIES, INC., <br><br> Defendants. | No. 17 C 6882 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Dean A. Monco, John S. Mortimer, and Wood, Phillips, Katz, Clark, & Mortimer allege that defendant Zsolt Rumy tortiously interfered with plaintiffs' expectancy of recovering legal fees for representing defendant Zoltek Corporation in patent litigation spanning the course of 20 years. Plaintiffs also seek recovery from defendants Zoltek and Toray Industries, Inc. (which purchased Zoltek in 2014) under a quantum meruit theory. Before the Court is Rumy's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) [37]. For the reasons explained below, the Court grants Rumy's motion without prejudice.

**STANDARD**

"A complaint need not include facts alleging personal jurisdiction. However, once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi–*

*Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When the court rules on the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id.* The Court reads "the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff to determine whether it has set forth a *prima facie* case for personal jurisdiction. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 877-78 (7th Cir. 2006). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783.

## BACKGROUND

Zoltek is a carbon fiber manufacturer based in Missouri. R. 28 ¶ 9. Rumy, a Florida or Missouri citizen,[1] founded Zoltek and was its majority shareholder until Toray (a Japanese corporation) acquired Zoltek in 2014. *Id.* ¶¶ 10-11, 17, 74. Plaintiff Wood Phillips is an Illinois law firm, and plaintiffs Monco and Mortimer are attorneys with Wood Phillips licensed in Illinois. *Id.* ¶¶ 6-8.

In 1996, Zoltek hired Monco and Mortimer to represent Zoltek in litigation conducted in Washington, D.C. to enforce a Zoltek patent ("Zoltek litigation"). *Id.* ¶¶ 1, 6-8, 16, 21-23. That litigation ended up lasting 20 years. *Id.* ¶ 2. Payment for Monco and Mortimer's work was largely on a contingency basis. *Id.* ¶¶ 23-24, 61. Ultimately, the relationship between Zoltek and Monco and Mortimer soured. After a crucial

---

[1] The amended complaint alleges that Rumy is a Missouri citizen (R. 28 ¶ 10), but Rumy claims he is a Florida citizen (R. 38 at 1). Because no party claims that Rumy is an Illinois citizen, his precise citizenship is not relevant for current purposes.

2

meeting in St. Louis in July 2016 scheduled by Zoltek's other outside counsel (Missouri-based Thompson Coburn), Zoltek terminated Monco and Mortimer as counsel, substituted another firm as lead counsel in the Zoltek litigation, and refused to pay Monco and Mortimer for overdue bills. *Id.* ¶¶ 81-83. Shortly thereafter, the Zoltek litigation settled for $20 million. *Id.* ¶¶ 89-90. Plaintiffs apparently did not recover any of that amount.

Plaintiffs filed suit in September 2017. R. 1. Plaintiffs amended their complaint in January 2018 to raise two claims: a claim against Rumy for tortious interference with prospective economic advantage (Count I), and a claim against Zoltek and Toray for recovery under quantum meruit (Count II). R. 28 ¶¶ 91-108. Both claims seek compensatory damages for legal fees and out-of-pocket expenses, and plaintiffs also seek punitive damages against Rumy. *Id.*

The amended complaint alleges several bases for specific and general personal jurisdiction over Rumy. As plaintiffs' counsel made clear at oral argument, however (R. 127 at 9-11), plaintiffs are currently asserting only one of those bases: that "[t]his Court . . . has specific jurisdiction over Rumy because he committed the intentional tortious acts set forth . . . in Count I, causing foreseeable injury to Plaintiffs in Illinois." R. 28 ¶ 15.

Count I sets forth the intentional tortious acts based on which plaintiffs claim specific personal jurisdiction. Plaintiffs allege that Rumy "purposefully interfered" with plaintiffs' attorney-client "relationship and [fees] expectancy" with Zoltek by "inducing Zoltek and Toray to discharge Monco/Mortimer as their attorneys." *Id.* ¶ 94.

3

Specifically, plaintiffs allege that "Rumy made false and misleading statements to Toray about the Zoltek Litigation and Monco/Mortimer," including a representation "that the value of the Zoltek Litigation was zero" and that Monco and Mortimer "had jeopardized the case by not taking damage discovery (even though discovery had been bifurcated and was still open at the time of settlement)." *Id.* "Through these machinations," plaintiffs allege, "Rumy was able to obtain Toray's assent to Rumy being personally paid a significant share, if not all, of the recoveries from the Zoltek Litigation." *Id.*

In other words, as currently pleaded, plaintiffs' tortious interference claim is based on Rumy's communications about plaintiffs' work on and about the value of the D.C.-based litigation. Although the amended complaint does not specify where and precisely to whom Rumy's communications took place, Rumy argues that if they occurred at all, the communications occurred during the meeting in St. Louis in July 2016 and were made to Missouri-based Zoltek executive personnel or their Missouri-based outside counsel Thompson Coburn. R. 38 at 4. Plaintiffs do not dispute in their response that the alleged communications were between Rumy and Zoltek personnel and/or Thompson Coburn and occurred in St. Louis.

Rumy filed a motion to dismiss for lack of personal jurisdiction in February 2018. R. 37. At the parties' joint request, this Court held oral argument on the motion in May 2018. R. 127. At oral argument, Rumy conceded that Missouri would have personal jurisdiction over him, but denied that Illinois does based on the tort as alleged. *Id.* at 34.

4

ANALYSIS

Because this Court is sitting in diversity, it has personal jurisdiction over the parties to the extent that an Illinois court could exercise such jurisdiction. *Philos Techs., Inc. v. Philos & D, Inc.,* 645 F.3d 851, 855 n.2 (7th Cir. 2011). "Illinois extends personal jurisdiction to the limits allowed by the United States Constitution, so the state and federal standards are congruent here." *Id.*

There are two branches of personal jurisdiction theory—general and specific. Plaintiffs assert only specific personal jurisdiction over Rumy. R. 43 at 1. Specific personal jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The "three essential requirements" for specific personal jurisdiction are: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

Where, like here, "a plaintiff's claim is for an intentional tort, the [first prong] focuses on whether the conduct underlying the claim[ ] was purposely directed at the forum state." *Id.* at 674. The parties have very different understandings of what constitutes purposeful direction "at" Illinois. Rumy focuses on the fact that his alleged tortious statements occurred while he was in Missouri. Plaintiffs, on the other hand,

focus on the fact that regardless of where the statements took place, they focused on Illinois plaintiffs and their business.

This area of the law is evolving, which complicates the analysis. But the Court agrees with Rumy that the more recent case law, all following the Supreme Court's decision in *Walden*, is on Rumy's side. In *Walden*, the plaintiff alleged that the defendant had wrongfully seized cash in Georgia, knowing that his act would injure the plaintiff in Nevada. 571 U.S. at 281. The Supreme Court rejected the court of appeals' view that the defendant's knowledge that the injury would be felt in Nevada and the fact that he "expressly aimed" his conduct at a Nevada resident justify compelling the defendant to defend himself in Nevada. *Id.* at 282.

*Walden* emphasized that "a state may assert specific jurisdiction (that is, jurisdiction based on a particular transaction) only if the defendant has 'a substantial connection with the forum State.'" *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) (quoting *Walden*, 571 U.S. at 284). "Not just any contacts will do"—the relevant contacts must be "'*suit-related.*'" *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quoting *Walden*, 571 U.S. at 284) (emphasis in original). And they must be "contacts that the defendant *himself* creates with the forum." *Walden*, 571 U.S. at 284 (emphasis in original). The principles apply equally in the tort context. *Id.* at 286.

With its focus on defendant's own suit-related contacts with the forum state, the Supreme Court in *Walden* put an important gloss on the express-aiming test for specific personal jurisdiction over tort claims set forth in *Calder v. Jones*, 465 U.S.

6

783 (1984). *Calder* stands for the proposition that a court can exercise specific personal jurisdiction based on intentional and allegedly tortious conduct "expressly aimed" at the forum state with knowledge that its effects would be felt in the forum state. *Felland*, 682 F.3d at 674-75. The Supreme Court in *Walden* made clear that to satisfy this test, the defendant's own allegedly tortious conduct must be directly connected to the forum state itself, and not just to the plaintiff who resides there. 571 U.S. at 287-88. In *Calder*, that conduct was writing an article with a "California focus" "for publication in California that was read by a large number of California citizens." *Id.* at 288. The article "connected the defendants to California, not just to the plaintiff." *Id.*

Here, the suit-related conduct by Rumy alleged in the amended complaint[2] consists of allegedly tortious statements made outside of Illinois at the St. Louis

---

[2] In addition to the amended complaint allegations, plaintiffs also attach several documents to their sur-reply in opposition to Rumy's motion to dismiss that Magistrate Judge Cole found to be non-privileged (R. 172). These documents are emails between Rumy and Toray and Zoltek representatives (all non-Illinois citizens) and related attachments. R. 172-1; R. 172-2; R. 172-3. Plaintiffs claim these documents support their position that "Rumy personally orchestrated Zoltek's termination of Plaintiffs" and that Rumy was "a personal claimant in the Zoltek Litigation." R. 172 at 1. But no matter how advantageous these documents may be for plaintiffs' claims on the merits, they are not contacts by Rumy with anyone in Illinois that support plaintiffs' specific personal jurisdiction argument.

Plaintiffs also attach to their response to Rumy's motion to dismiss two emails between Rumy and plaintiffs in May and June 2016. Rumy in his reply brief objected to plaintiffs' attachment of these communications, saying they are covered by the attorney-client privilege and inadmissible. That privilege issue was never briefed by plaintiffs. At oral argument, this Court explained that the parties should litigate the issue of these documents' privilege before Magistrate Judge Cole. R. 127 at 15. Despite proceeding before Judge Cole for a number of months on discovery issues and mediation, the parties appear to have never raised this issue. Perhaps this is because Rumy at oral argument agreed to "withdraw" the affidavit filed in support of his

7

meeting. Plaintiffs have not pleaded conduct related to their claim establishing a "substantial connection" by Rumy with Illinois itself. *Walden*, 571 U.S. at 284.

Plaintiffs in their response focus on the fact that Rumy "created a three-way relationship with Rumy in Florida and Missouri, Monco/Mortimer in Illinois, and Zoltek/Toray in Missouri." R. 43 at 8. Plaintiffs say that Rumy's communications "with Zoltek to get Monco/Mortimer removed were 'expressly aimed' at Illinois . . . , even if they occurred in Missouri." *Id.* It is certainly true that Rumy's alleged statements allegedly caused the third-parties in this three-way relationship (non-Illinois-based Toray and Zoltek representatives) to terminate a business relationship with plaintiffs in Illinois. But contacts between "third parties and the forum do not satisfy the [purposeful direction] requirement." *Advanced Tactical*, 751 F.3d at 801.

Plaintiffs also emphasize that Rumy knew his statements would cause a "foreseeable injury to Plaintiffs in Illinois." *E.g.*, R. 28 ¶ 15. Indeed, Rumy had a 20-year working relationship with plaintiffs in Illinois, including frequent oral and

---

motion to dismiss "as unnecessary for the argument presently before the Court" on specific personal jurisdiction. *Id.* at 8. There is thus no "affidavit[ ] or other evidence in opposition to the exercise of jurisdiction" submitted by Rumy that would require consideration of plaintiffs' "affirmative evidence" beyond their allegations. *See Purdue*, 338 F.3d at 782. Plaintiffs at oral argument maintained that they had established a *prima facie* case of specific personal jurisdiction without relying on the emails. The Court therefore reaches its holding without consideration of these emails.

The Court notes, however, that even if it were to consider these emails, plaintiffs' current complaint allegations do not mention these emails or connect them up with the alleged tortious interference. Again, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical*, 751 F.3d at 801. As explained below, the Court will give plaintiffs an opportunity to replead, before which they may wish to litigate the issue of these documents' privilege before Judge Cole as previously instructed.

written communications directed to plaintiffs in Illinois. *Id.* ¶¶ 1-2, 6-8, 16. Based on these allegations, it is certainly true that Rumy had to know that any harm would be felt by plaintiffs in Illinois. But mere foreseeability of harm to plaintiffs who the defendant knows are based in Illinois is insufficient post-*Walden*. *See Advanced Tactical*, 751 F.3d at 796 (after *Walden,* it was "error" to find personal jurisdiction based merely on defendant's knowledge that plaintiff was "was an Indiana company" and the fact that defendant "could foresee that [its actions] would harm [plaintiff] in Indiana"); *Ariel Investments*, 881 F.3d at 522 ("Knowing about a potential for harm in a particular state is not the same as acting *in* that state—and it takes the latter to permit personal jurisdiction under state law."); *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 918 (N.D. Ill. 2017) ("*Walden* firmly established that, regardless of how foreseeable it may be that the defendant might be sued in a particular forum, due process is not satisfied where the plaintiff is the only link between the defendant and that forum.").

At oral argument, plaintiffs' position crystalized further: they focused on the fact that Rumy's alleged communications aimed to injure plaintiffs' legal *business* in Illinois, and specifically aimed to "break[ ]" an Illinois-connected business "relationship." R. 127 at 37, 40, 44. The problem with this argument is that it still places the focus on defendant's contacts with and effects on plaintiff, rather than defendant's necessary "substantial connection" with Illinois itself. *Walden*, 571 U.S. at 284. "The plaintiff cannot be the only link between the defendant and the forum." *Id*. at 285. "Rather it is the defendant's conduct that must form the necessary

connection with the forum State that is the basis for its jurisdiction over him." *Id.* Monco's alleged tortious statements occurred in Missouri, were made to non-Illinois residents, and focused not on anything specifically having to do with Illinois, but rather on plaintiffs themselves and on litigation occurring in D.C.

It is true that even post-*Walden*, several district court cases have found specific personal jurisdiction over an out-of-state defendant who allegedly tortiously interfered with "an Illinois-connected business relationship" through conduct outside of Illinois. *MG Design Assocs., Corp. v. CoStar Realty Info., Inc.*, 267 F. Supp. 3d 1000, 1018-19 (N.D. Ill. 2017) (finding specific personal jurisdiction because the out-of-state defendant allegedly interfered with the plaintiff's business in Illinois (tradeshow operations) by damaging that Illinois company's reputation); *Apex Physical Therapy, LLC v. Ball*, 2017 WL 3923368, at *2 (S.D. Ill. Sept. 7, 2017) (finding that the plaintiff made a *prima facie* case of specific personal jurisdiction on a tortious interference claim where out-of-state defendant's allegedly tortious conduct "was expressly aimed at" an "outstanding business relationship" with "an Illinois-based company"). And pre-*Walden*, the Seventh Circuit in *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010), explained that specific personal jurisdiction is proper where, "although they acted from points outside the forum state, . . . defendants specifically aimed their tortious conduct at Tamburo and his business in Illinois with the knowledge that he lived, worked, and would suffer the brunt of the injury there." *Id.* at 706.[3]

---

[3] Despite this broader statement of law, *Tamburo* is distinguishable from this case on its facts. The *Tamburo* court found that defendants made an "electronic 'entry' into Illinois for jurisdictional purposes," including based on allegations that

10

But the Court has significant doubt as to whether these statements of the law are correct under *Walden*, especially in light of the Seventh Circuit's recent discussion of *Walden* in *Ariel Investments*—a case neither party cites. The district court in *Ariel Investments* found specific personal jurisdiction over a trademark infringement claim based on allegations that the out-of-state defendant "deliberately set out to trade on the reputation and good will of an Illinois entity," and "in effect, reached into the holder's home forum to take its property." *Ariel Investments, LLC v. Ariel Cap. Advisors, LLC*, 2015 WL 13653007, at *3 (N.D. Ill. Oct. 29, 2015). The district court reasoned that "[w]hen an out-of-state entity chooses to trade on the established name of an entity in the forum state and use that name for its own gain, it has, in the Court's view, established a relationship not just with the in-state entity, but with the forum state itself" that "is sufficient under *Walden*." *Id.* The district court in *MG Design* relied on the district court's decision in *Ariel Investments* to find that "infringing on an Illinois corporation's intellectual property and interfering with the Illinois corporation's business" sufficed to supply personal jurisdiction. 224 F. Supp. 3d at 632-33.

The Seventh Circuit reversed. It rejected the argument that a defendant may be "subject to personal jurisdiction in any state at which it 'aimed its actions,'" or that

---

defendant "personally contacted [plaintiff] by email" in Illinois as part of the alleged tort and supplied plaintiff's "Illinois address" in online postings. 601 F.3d at 706. *Walden* expressly declined to address "the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular state." 571 U.S. at 290 n.9. Like *Walden*, this case does not present the question of virtual entry into Illinois based on the facts as pleaded.

11

"sett[ing] out to injure plaintiff's business, knowing that it is located in Illinois" suffices for specific personal jurisdiction. 881 F.3d at 522. In other words, even conduct aimed at injuring plaintiff's forum state business is insufficient where that conduct does not connect the defendant to the forum state itself. *See, e.g.*, *Green Light Nat'l, LLC v. Kent*, 2018 WL 4384298, at *4 (N.D. Ill. Sept. 14, 2018) (finding that after *Walden* and *Ariel Investments*, allegations that defendant's "intentional, tortious conduct was expressly aimed at [plaintiff's] business in Illinois, and through his existing relationship with [plaintiff], he know what [plaintiff] would be injured in Illinois" were insufficient).

This is what the court in *Kraft Chem. Co. v. Salicylates & Chemicals Private Ltd.*, 2014 WL 11127924, at *2-3 (N.D. Ill. Oct. 28, 2014), reasoned when addressing a tortious interference claim similar to plaintiffs' claim against Rumy. There, an Illinois-based company (Kraft) sued non-Illinois based defendants for tortious interference with prospective economic opportunity. *Id.* at *1. Kraft alleged interference with its "longstanding business" with a third-party through a series of actions by the defendants, none of which were undertaken in Illinois, including "transmit[ing] derogatory information regarding Kraft to [the third-party] to put Kraft in a negative false light." *Id.* The district court found that after *Walden*, "the alleged intentional infliction of injury upon a known Illinois resident . . . does not suffice to establish personal jurisdiction . . . [where] it does not evince any contact with the forum state." *Id.* at *3. Like in *Kraft*, plaintiffs' claim that Rumy intentionally inflicted an injury on an Illinois-connected business relationship based

12

on actions taken outside Illinois does not evidence any suit-specific contacts by Rumy with Illinois itself. The Court therefore finds that plaintiffs have failed to make a *prima facie* showing of personal jurisdiction.

The Court gives plaintiffs an opportunity to replead to try to set forth a plausible factual basis for minimum contacts between Rumy and Illinois. The success of repleading will depend in large part on how plaintiffs define the alleged tort and Rumy's contacts with Illinois related to that tort. *See, e.g., Kraft Chem. Co. v. Salicylates & Chemicals Private Ltd.*, 149 F. Supp. 3d 897, 904 (N.D. Ill. 2015) (after repleading, finding factual disputes warranting a personal jurisdiction evidentiary hearing regarding, among other issues, "allegations of [defendant's] efforts in Illinois to undermine [plaintiff's] relationship with [the third-party]"); *Green Light Nat'l*, 2018 WL 4384298, at *5 (suggesting that plaintiffs may be able to establish specific personal jurisdiction through evidence of "phone and email communications and sustained contact with Plaintiff" in Illinois "related to the claims raised"); *Felland*, 682 F.3d at 675 (even though defendant's initial real estate fraud deal occurred in Mexico, subsequent "lulling" communications to the plaintiff in Wisconsin established specific jurisdiction); *Café Real Est. LLC v. VSP N. Am. LLC*, 262 F. Supp. 3d 637, 640-41 (N.D. Ill. 2017) (case cited by plaintiffs finding that Canadian defendants' email communications directed at plaintiff in Illinois related to the fraud, combined with plaintiffs' injury in Illinois, established specific personal jurisdiction). Plaintiffs also may make arguments on the other bases they originally pleaded for this Court's

personal jurisdiction over Rumy, which plaintiffs expressly declined to assert for purposes of this motion. R. 127 at 9-11.

## CONCLUSION

For the foregoing reasons, the Court grants Rumy's motion to dismiss for lack of personal jurisdiction [37] without prejudice. A status hearing is set for October 4, 2018. At that status hearing, plaintiffs should let the Court know whether they believe they can set forth a plausible basis for minimum contacts between Rumy and Illinois in an amended complaint. Plaintiffs also should let the Court know if they wish to litigate the privilege of the emails attached to their motion to dismiss response before Judge Cole prior to filing that amended complaint.

ENTERED:

_Thomas M Durkin_
-----------------------------------------
Honorable Thomas M. Durkin
United States District Judge

Dated: September 21, 2018