# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DEAN A. MONCO, an individual, et al.,   )
                                      )
             Plaintiffs,       )     No. 17 C 6882
                                        )
v.                                 )     Magistrate Judge Jeffrey Cole
                                        )
ZOLTEK CORPORATION, a       )
Missouri corporation, et al.,        )
                                        )
             Defendants.    )

## MEMORANDUM OPINION AND ORDER

The plaintiffs have filed a motion titled "Motion for a Finding of Non-Privilege on Two Emails." The motion is not a discovery motion, as it directed to two emails that were not part of discovery production. That's because the plaintiffs already had them: Mr. Rumy, a co-defendant, wrote the emails to the plaintiffs' law firm in May and June of 2016. The plaintiffs attached these emails as exhibits to their response to Mr. Rumy's motion to dismiss in February of 2018. At a hearing on the matter on March 14, 2018, counsel for defendant, Zoltek Corp., objected to the admissibility of the two documents based on a claim of attorney-client privilege, [Dkt. #48, at 5], and the court gave Zoltek Corp an opportunity to lodge its objection in a written statement [Dkt. # 48, at 9], which Zoltek Corp filed on March 16, 2018. [Dkt. # 49]. Defendant, Zsolt Rumy, also objected to admissibility of the emails based on the privilege in his reply brief filed on March 20, 2018. [Dkt. # 57, at 8-10].

The district court ruled on Mr. Rumy's motion to dismiss on September 21, 2018. The court granted the motion, dismissing the plaintiffs' Complaint against Mr. Rumy for lack of personal

jurisdiction without prejudice. [Dkt. #183]. The court made its ruling without needing to consider the two emails and, so, did not rule on their admissibility. [Dkt. #183, at 7 n.2]. Instead, the court said that:

> even if it were to consider these emails, plaintiffs' current complaint allegations do not mention these emails or connect them up with the alleged tortious interference. . . . the Court will give plaintiffs an opportunity to replead, before which they may wish to litigate the issue of these documents' privilege before Judge Cole as previously instructed.

[Dkt. #183, at 7 n.2]. So, it would seem, the current motion is something in the nature of a motion *in limine* well in advance of any dispositive motion or trial. It would also seem that it is another in what hopefully will not become a line of motions from the plaintiffs [Dkt. # 194] that are filed before facts are in, objections are made, and issues are sufficiently crystallized to truly allow for a ruling that is anything but speculative. *Cf. Daniels v. FanDuel, Inc.*, 884 F.3d 672, 675 (7th Cir. 2018)(warning against issuing advisory opinion); *Cook Cty. Republican Party v. Sapone*, 870 F.3d 709, 711 (7th Cir. 2017)(same). In any event, Judge Durkin has referred the motion to me for a ruling. The motion must be denied.

## A.

Plaintiffs first argue that the two emails at issue are not even privileged. They contend that plaintiff, Zsolt Rumy, was not an officer of defendant, Zoltek Corp, at the time he wrote the emails; the plaintiffs concede, as they must, that Mr. Rumy was asking for legal advice and explaining to plaintiffs what he hoped to accomplish, and thus, was inviting the creation of an attorney-client relationship in the emails. Judge Durkin has explained as much and said he "ha[d] no doubt these are privileged communications . . . ." [Dkt. #127, at 14]. And nothing has changed since that hearing

2

– they still are.

An attorney-client relationship may not have come to fruition because perhaps, as plaintiffs claim, the subject matter posed a conflict of interest with plaintiffs' actual client, Zoltek Corp. [Dkt. # 190, at 3].[1] But it would make little sense – and would be troubling if it is how the plaintiffs do business – if, as the plaintiffs suggest, they need not maintain the confidences of clients until they were actually retained or if they could divulge those confidences if they later determined they had a conflict of interest and could not take on the client. *See, e.g., Barton v. U.S. Dist. Court for Cent. Dist. of Cal.*, 410 F.3d 1104, 1111 (9th Cir. 2005)("Prospective clients' communications with a view to obtaining legal services are plainly covered by the attorney-client privilege); *In re Auclair*, 961 F.2d 65, 70 n. 14 (5th Cir. 1992)(preliminary communications are privileged); 8 Wigmore, Evidence, § 2304 (McNaughton ed. 1961)(". . . it would seem plain, by the reason of the privilege, that, since the would-be client cannot certainly predict the attorney's acceptance of the employment, the former must be protected in his preliminary statements when making the overtures, even if the overture is refused."); *United States v. Dennis*, 843 F.2d 652, 656 (2nd Cir. 1988)(". . . initial statements made while [party] intended to employ [attorney] were privileged even though the employment was not accepted.").

---

[1] Plaintiffs have also not abided by Local Rule 26.2, which requires that, when documents are filed electronically, a party must: "(1) provisionally file the document electronically under seal; (2) file electronically at the same time a public-record version of the brief, motion or other submission with only the sealed document excluded; and (3) move the court for leave to file the document under seal. The sealing motion must be filed before or simultaneously with the provisional filing of the document under seal, and must be noticed for presentment promptly thereafter." Each time the plaintiffs have attempted to file materials under seal – including their instant motion – they have failed to make a provisional electronic filing. [Dkt. ## 167, 169, 178, 177, 185, 187, 190, 192]. Hence, while the court does have a courtesy copy of an unredacted version of plaintiff's motion, the page references in this order are to the redacted version.

In the only case that plaintiffs rely on, *Mueller v. Berkman*, 399 Ill.App.3d 456, 927 N.E.2d 795 (2nd Dist. 2010), the court was faced with the issue of the application of the attorney-client privilege when a law firm represents both an individual and that individual's business – dual representation. That case doesn't move the needle in plaintiffs' favor here. The individual hoping to assert the attorney-client privilege in *Mueller* had a pre-existing relationship with the firm when the company he owned was purchased by a corporation. The law firm continued to represent the individual when, several years later, it also took on representation of the corporation. The two – individual and corporation – became adversaries, but, the court found there was no evidence that the law firm ever informed the individual of the potential conflict of interest, as it was required to do under the Illinois Rules of Professional Responsibility. *Mueller*, 399 Ill. App. 3d at 465, 927 N.E.2d at 8046. Because of this, the court noted that the individual may not have understood that the firm's representation of the corporation would compromise its ability to keep the individual's communications confidential. *Mueller*, 399 Ill. App. 3d at 465, 927 N.E.2d at 804. On the other hand – as the court put it – the individual was "well aware" that the law firm had been representing the corporation for a number of years by the time the corporation sued him. *Mueller*, 399 Ill. App. 3d at 465, 927 N.E.2d at 804. So, the court found, the individual did not reasonably believe that the communications he had with the firm once the dual representation had begun would be confidential. *Mueller*, 399 Ill. App. 3d 456, 465, 927 N.E.2d at 804.

Here, as the plaintiffs concede, there was no dual representation. [Dkt. # 190, at 3]. When Mr. Rumy approached plaintiffs for advice about a transaction, he was no longer an officer with Zoltek Corp. While there may have been a conflict of interest for plaintiffs to represent Mr. Rumy or give him advice about the transaction he wanted to accomplish, plaintiffs don't point to any

evidence that shows he knew that at the time. Like the law firm in *Mueller*, it appears – at least from what evidence the plaintiffs give us, that the plaintiffs failed to explain the conflict of interest to Mr. Rumy – although it is suggested that they immediately declined to represent him. The only evidence plaintiffs provide of an awareness of a potential conflict of interest comes two months after the dates of the emails when Mr. Rumy's attorney expressed the concern [Dkt. # 190, at 3]. Following *Mueller* as plaintiffs would have me do, I cannot find – at least not based on what plaintiffs have provided – that when Mr. Rumy approached the plaintiffs for advice about the transaction, he did not have a reasonable belief that his questions would be kept confidential.

Next, the plaintiffs argue that, because they are bringing a fee-collection case against the defendants, the defendants' attorney-client privilege is waived. [Dkt. #190, at 5]. Plaintiffs are able to cite just a single case for this proposition, *First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 110 F.R.D. 557, 561 (S.D.N.Y. 1986), which was not a fee collection case itself. The court merely mentioned in passing that "[i]n the fee collection case, even though it is initiated by the attorney and thus not easily characterized as a waiver by the client, invasion of the privilege was justified, according to the courts, because it would be a 'manifest injustice' to 'permit [ ] a client to use the privilege to his attorney's disadvantage.'" 110 F.R.D. at 561 (citations omitted). The court did cite two ancient fee collection cases, but neither supports invasion of the privilege in the plaintiffs' fee collection case.

The court in *Mitchell v. Bromberger*, 2 Nev. 345, 349 (1866) held that when there was:

 a suit between the attorney and client the disclosure of privileged communications becomes necessary to the protection of the attorney's own rights, he is released from those obligations of secrecy which the law places upon him. He should not, however, disclose more than is necessary for his own protection.

2 Nev. at 349. And in *Stern v. Daniel*, 47 Wash. 96, 98 (1907) , the court held that certain letters were admissible to show that lawyer had rendered services to the client in the way of advice and consultation, for which the lawyer was entitled to recover. 47 Wash. at 98. Again, the two emails at issue here evince Mr. Rumy asking for advice on a transaction; an overture, we are told by the plaintiffs, that they rebuffed. Hence, the emails are not evidence of services rendered nor necessary to be disclosed to support plaintiffs' fee collection case.

The plaintiffs also argue that Zoltek Corp's malpractice case against them waives the attorney-client privilege. "[T]he attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation." *Garcia v. Zenith Electronics Corp*., 58 F.3d 1171, 1175 n. 1 (7th Cir.1995). But, the privilege is not waived simply because a malpractice case is filed and a law firm lodges affirmative defenses against it. *See Webster Bank, N.A. v. Pierce & Associates, P.C.*, 2018 WL 704693, *7 (N.D.Ill. 2018); *see also Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987)("To waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case. Most often, this occurs through the use of an affirmative defense."); *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc*., 189 Ill. 2d 579, 586 (2000)("To allow [plaintiff] to invade the attorney-client privilege . . . simply by filing the affirmative defenses it did [in legal malpractice case] would render the privilege illusory.").

The Illinois Supreme Court has recognized that both the attorney-client privilege and the work-product privilege may be waived as to a communication put "at issue" by a party who is a holder of the privilege in *Waste Management, Inc. v. Int'l Surplus Lines Ins. Co.* , 144 Ill.2d at 199–200, 579 N.E.2d 322 (1979). Since then, courts have applied the concept by asking whether

6

the sought-after communications were actually placed 'at issue' or whether they were simply relevant to the dispute. *See, e.g., Edgewater Med. Ctr. v. Rogan*, No. 04 C 3579, 2010 WL 2711448, at \*9 (N.D. Ill. July 6, 2010); *Western States Ins. Co. v. O'Hara*, 357 Ill. App. 3d 509, 520–21, 828 N.E.2d 842  (4th Dist. 2005); *Shapo v. Tires 'N Tracks, Inc.*, 336 Ill. App. 3d 387, 394, 752 N.E.2d 815 (1st Dist. 2002); *Hayes v. Burlington No. and Santa Fe Railway Co.,* 323 Ill.App.3d 474, 752 N.E.2d 470 (2001); *Chicago Meat Processors, Inc. v. Mid-Century Ins. Co.*, No. 95 C 4277, 1996 WL 172148, at \*4 (N.D. Ill. Apr. 10, 1996).

So, the question becomes what issues are the defendants raising that require resort to disclosure of the emails at issue here?  Are the defendants using these communications or communications like them as a "sword and a shield" such that allowing them to maintain the privilege over the emails at issue would be unfair?  *See, e.g., Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 518 (N.D. Ill. 2005). Or, are the emails perhaps merely relevant to the parties' dispute?

Again, we just don't know.  Based on what the plaintiffs have given the court to go on, which is precious little, we can't answer any of these questions in favor of finding a waiver.   The plaintiffs simply claim that disclosure of the emails is necessary to show that plaintiffs were not fired because of poor performance, but because of Mr. Rumy's transaction.  [Dkt. # 190, at 5].  Why this is they do not explain. Plaintiffs add nothing more to this argument, so we don't know how the two emails enter into this.  Perfunctory, undeveloped arguments such as this are generally deemed waived. *United States v. Parkhurst*, 865 F.3d 509, 524 (7th Cir. 2017); *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009).  Plaintiffs have not yet filed an Answer to the malpractice claim because they instead filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6). [Dkt. #59].  That motion is not based

on Mr. Rumy's transaction, but on the applicable statute of limitations for claims against attorneys under Illinois law. [Dkt. #59, at 8-11; Dkt. # 88, at 5-10]. The emails at issue are not relevant to this defense, which is the only defense currently lodged against the malpractice claim. As such, plaintiffs provide no valid reason to find a waiver of the privilege as to these emails.

Finally, plaintiffs argue that the privilege is waived because they have leave to file an Amended Complaint against Mr. Rumy and, therefore "disclosure of the communications in this action is permitted . . . to establish jurisdictional contacts in Illinois by Rumy . . . ." [Dkt. #190, at 5]. Without considering whatever Amended Complaint the plaintiffs might file, it is premature to say, one way or the other, whether the emails are relevant to jurisdictional contacts in Illinois. As Judge Durkin ruled on September 21st, the question will be whether Mr. Rumy's suit-related contact with Illinois creates a substantial connection with the forum state. [Dkt. #183, at 7 n.8]; and therefore, the plaintiffs' "complaint allegations . . . [must] connect the[ emails] up with the alleged tortious interference." [Dkt. #183, at 7 n.8]. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014)("... the relationship must arise out of contacts that the 'defendant himself' creates with the forum State. . . 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."); *see also Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018)(rejecting theory that "a defendant should be subject to personal jurisdiction in any state at which it 'aimed its actions.'"). There are no Complaint allegations to consider at this point, so there is no connection to examine at this point. Moreover, there is not even any explanation from the plaintiffs in that motion how the emails at issue – requests for advice regarding a transaction – were connected with Mr. Rumy's alleged tortious interference with plaintiffs' relationship with Zoltek Corp. Again, intending no disrespect to

counsel, the plaintiffs' position is perfunctory, undeveloped, and unsupported by any citation to pertinent authority. *See Parkhurst*, 865 F.3d at 524; *Mahaffey*, 588 F.3d at 1146.

For the foregoing reasons, the plaintiffs' "Motion for a Finding of Non-Privilege On Two Emails" [Dkt #190] is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/10/18